OREN S. FRENCH versus INHABITANTS OF SANGERVILLE.

Section 1, c. 298 of the Public Laws of 1865, did not ratify the vote of a town whereby it voted to pay a bounty to drafted "non-combatants" who were credited upon such town's quota, but were discharged under § 17, c. 13 of Act of Congress approved Feb. 24, 1864.

ON REPORT.

CASE, to recover a bounty voted by the defendant town, at a legal meeting held Jan. 23, 1865.

It appeared that the plaintiff was an inhabitant of defendant town on Sept. 22, 1864, was there duly enrolled and was legally drafted for the period of one year, in accordance with the provisions of the Act of Congress for enrolling and calling out the national forces, approved March 3, 1863, and the Act amendatory thereof, approved Feb. 24, 1864, at the provost marshal's office for the 4th district of this State. That he was duly notified to report accordingly, on or before Sept. 27, 1864, at the place of rendezvous, in Bangor, or be deemed a deserter and be subject to the penalty prescribed therefor by the rules and articles of war. That he duly reported himself as required, and was examined and accepted. That the plaintiff was of that class denominated non-combatants, conscientiously opposed to the bearing of arms, and was duly qualified to be exempt therefrom, in accordance with § 17 of said Act, approved Feb. 24, 1864, and, on Oct. 18, 1864, after all due preliminaries, paid, in accordance with the provisions of this Act, three hundred dollars, whereupon he was duly discharged from liability under the draft. That he was credited in the quota of Sangerville, under the call. That he, in May, 1865, made a demand on the Selectmen of Sangerville for the order mentioned in the vote of the town.

Plaintiff put in the record of warrant and votes of the town under it, at a meeting held Jan. 25, 1865.

It also appeared that drafted men did not subscribe any oath or sign any roll, but they were simply examined, and

such as were accepted were sent to the seat of war and assigned to a regiment.

*Charles C. Chandler,* called by the defendants, testified :

" Was one of the commissioners at provost marshal's office at Bangor. Mustering in of drafted men is as follows :

" The regulations require that we shall know that the drafted man is sound and present; that we shall certify to same, together with his descriptive list. This certificate is signed by the commissioners and forwarded with the drafted man. The act of mustering is, usually, to call the drafted men into line ; provost marshal is expected to see them in line ; no papers signed by, no oath administered to drafted men. The officers cause his name to be put in the muster-roll that the man was mustered in such a day.

" Those exempted, or pay commutation, are never considered as being in military duty. If a drafted man does not report when notified he is considered a deserter."

The case was then continued "Law on report," the Court to render such judgment as the law of the case required.

*J. Crosby,* for the plaintiff.

The money paid by a " non-combatant" is not strictly commutation, but it is applied " to the benefit of the sick and wounded soldiers." Act of Congress, 1864, c. 13, § 17. Plaintiff was credited upon the town's quota, and the town voted to pay him for his service, months after he performed it, as an act of justice and to equalize the burden of its citizens. The town has not modified the vote passed specially to meet this case, and the municipal officers simply defend, in order to test their authority for assessing the tax to meet it.

The Legislature has ratified the doings of towns in raising bounties, with the exception of one class of cases, viz. : " to raise money to be paid by way of commutation, to relieve or discharge any person drafted," &c., by authority of any Act of Congress, when such person has neither been mustered into said service nor furnished a substitute." Public Laws of 1864, c. 226, § 12 ; 1866, c. 59, § 4. These

French *v.* Inhabitants of Sangerville.

exceptions have no reference to the case of money paid by a con-combatant, whose money does not go "for the procuration of a substitute," as in the case of commutation properly so called, but is "applied to the benefit of sick and wounded soldiers."

"Commutation," in the Acts of Congress of 1863, Acts of the Legislature of Feb. 20, 1864, and opinion of the Judges in 52 Maine, 596, means the money paid "for procuration of a substitute," and not that of the man of "conscientious scruples" "applied to sick soldiers." Act of Cong., Feb. 24, 1864, amendatory of Act of 1863, provides that "in no instance shall the exemption of any person on account of his payment of commutation money for the procuration of substitute extend beyond one year." Same Act, § 17, provides for the first time for non-combatants, but neither there nor any where else applies "commutation" to them. The "commuter" avails himself of his privilege on selfish principles, and his money is used for belligerent purposes; while the "non-combatant" avails himself of his privilege from religious considerations, and his money is applied to the offices of mercy.

The vote of the defendants was ratified by Public Laws of 1865, c. 298, and 1866, c. 59. The former ratifies acts in favor of "volunteers, drafted men or substitutes of drafted men or enrolled men, who have been or shall be actually mustered into the military or naval service of the United States."

The excepting clause in Act of 1866, specifically applies to the ordinary "commuter," but it does not apply to the non-combatant. *Exceptio unius est exclusio alterius.* Non-combatants are Quakers or Shakers, and they are exempt from military duty under the constitution of Maine, art. VII. § 5. See also State Militia Laws of 1820, 1834, 1841, 1857 and 1865.

Not only the spirit of the Acts of 1865 and 1866 is intended for the benefit of the non-combatant, but he is clearly within the letter of them.

Act of 1865 speaks of "drafted men who have been or shall hereafter be actually mustered into the military or naval service." Act of 1866 ratifies the doings of towns for "drafted men mustered into the military or naval service." A "muster in" of a drafted man differs from that of an enlisted man or volunteer. Simple draft is sufficient to hold the former as a deserter. Plaintiff was drafted and accepted, which constitute his "muster in." Plaintiff tendered performance of his contract with government. Act of Cong. of 1864, c. 13, § 17. He was in service "in hospital" from date of acceptance till discharge, Oct. 18, 1864. He did all required of him, and is entitled to recover. *Frazier* v. *Cushman*, 12 Mass., 277; *Lord* v. *Tyler*, 14 Pick. 156; Chit. on Con., 633.

*H. Hudson*, for the defendants.

KENT, J.—The claim of the plaintiff is under this vote of the town:—"Voted, to give an order of three hundred dollars, payable in equal annual payments of one hundred dollars each, and interest, to every man that was drafted, who went into the service of the United States himself, and to every man who put in a substitute, or paid commutation under the 17th section of the conscription act, who served to fill the quota of this town, under the call of the President of the United States of July, 1864, for 500,000 men."

The plaintiff shows that he was drafted and paid commutation under the aforesaid 17th section, and that he was counted on the quota of the town. He thus apparently brings himself within the language and meaning of the above vote of the town.

The 17th section referred to, (c. 13, § 1, 1864,) provides "that members of religious denominations, who shall by oath or affirmation, declare that they are conscientiously opposed to the bearing of arms, and who are prohibited from doing so by the rules and articles of faith and practice of said religious denominations, shall, *when drafted* into the military service, be considered *non-combatants*, and shall be

assigned by the secretary of war to duty in the hospitals, or to the care of freedmen, or shall pay the sum of three hundred dollars to such person as the secretary of war shall designate to receive it, to be applied to the benefit of sick and wounded soldiers."

The case finds that the plaintiff was drafted and notified; that he appeared at the time named, was examined and accepted; that he was one of a class named in the 17th section; that he made the proof required and paid the three hundred dollars named in the statute and was duly discharged from liability on said draft. He was counted on the quota of the town; being an inhabitant at the time and liable to the draft.

It is conceded that the vote of the town was unauthorized and invalid, as transcending the legitimate powers of the corporation, and can only be made valid by an Act of ratification by the Legislature. It is said that such an Act has been passed. We have been referred to several Acts on this subject. The one in 1865, (c. 298, § 1,) which was the year next succeeding the vote in question, declares " that the past acts and doings of cities, towns and plantations, in offering, paying or agreeing to pay, and in raising and providing the means to pay bounties to, and all notes and town orders given by the municipal officers, in pursuance of a previous vote, for the benefit of volunteers, drafted or enrolled men, who have been or shall hereafter be *actually mustered* into the military or naval service of the United States, are hereby made valid." The votes of other years are substantially the same on this point.

It is apparent that the Legislature had not the same interest or views that this town had, when it specially designated for its bounty, men who were by the law named in the vote, *non-combatants*, provided they could count on their quota. The country, in its then needs, wanted men for the field, — not non-combatants for the hospital, — or a sum of money in lieu of personal services. The Legislature, therefore, understanding this condition of things, took especial

French *v.* Inhabitants of Sangerville.

pains to limit its ratification of the votes and acts of towns in granting bounties, to those; men who were actually mustered into the military or naval service of the United States.

It is clear that the plaintiff must bring his case within the rule given in the Act of ratification. Does it come within that rule? Can a man, who on being drafted, placed himself in the class, which the law had recognized as exempts from all military duty by payment of a sum of money, and was thereupon discharged, be said to have been mustered into the *military* service?

It is contended that a drafted man is actually mustered into the military service as soon as drafted and notified of the fact. In a certain sense he is, undoubtedly, under martial law, so far, that he may be treated as a deserter if he does not report himself to the provost marshal's office. But is he thereby actually mustered in, within the meaning of the statute? The 17th section of the statute of the United States, declares that this class of men " shall, *when drafted* into the military service, (not when mustered,) be considered *non-combatants*." They are so considered from the beginning, whenever they place themselves within the class. When a drafted man reports himself, he must first be examined by the surgeon, as to his physical fitness. If found sound and ablebodied, he is then mustered actually into the military service, unless he claims to be a non-combatant. If he makes that claim to exemption from military duty, on the ground of conscientious scruples against performing any strictly *military* acts, he may be assigned to duties in the hospital or in care of freedmen, or, if he prefers to retire at once, he may pay three hundred dollars.

Would it be seriously contended that a drafted man, who had simply reported and been found *unfit* for the service, and had thereupon been released from all claim on him under the draft, had been actually mustered into the military service, and was therefore entitled to be paid, under this provision of the Act of ratification?

In the case before us, the plaintiff paid the money and was

discharged. It does not appear that he was ever placed under military orders, or even "called into line," or ever entered on any muster roll of soldiers accepted or in service. He was examined by the surgeon, passed his examination, claimed to be a non-combatant, and "had his claim allowed," paid his money and returned home, with a clear conscience so far as any military act or bearing of arms was concerned. He now, however, sets up a claim to be paid a bounty, on the ground, which he must assume, that he was a soldier actually mustered into the military service. But we are dealing only with his legal rights.

The Legislature certainly intended something beyond a mere drafting into service, or they would have simply said "all drafted men," and omitted the qualification in the last clause as to mustering in.

When this statute was passed, it was well known that the conditional exemption of non-combatants existed and would be claimed. The Legislature did not intend to interfere with or qualify this right under the law of the United States. But it did not intend to give to towns the right and power to encourage men to seek for this exemption by voting bounties to them perhaps equal to or exceeding the sum required to be paid by them to the United States. They intended to ratify votes, giving bounties to the actual soldiers, who had entered the military service, and been mustered and enrolled and placed under military rules and discipline, as live and real men, composing the great army of the republic, in its struggle for existence. It was not intended to place the actual soldier, so far as the bounty was concerned, on the same footing as the *non-combatant.*

"Combatant" is defined by Worcester as "one who combats—a fighter." These were the men then needed for the field, and they were found, and the bounties promised to these men have been honorably paid with few, if any, exceptions.

It was certainly in the power of the Legislature to refuse its sanction to votes like the one before us. There

would seem to be no injustice or hardship in withholding a special bounty to an ablebodied drafted man, who declined to enter the service on conscientious scruples. It would seem to be enough to regard those scruples, and to permit the person to decline the military service, and either enter the hospitals, or to pay a moderate sum in lieu of such service, to be applied to hospital purposes.

The view we have taken, renders it unnecessary to consider the questions raised as to the legality of the town meetings, and other questions. Nor are we called upon to discuss the points made in the able and ingenious argument of the plaintiff's counsel on the construction of various sections of the statutes, forbidding towns to raise money to be paid by way of "*commutation.*" We are satisfied that the case before us is not within the clause of ratification, because the plaintiff has not shown that he was ever "actually mustered into the military service of the United States."

*Plaintiff nonsuit.*

APPLETON, C. J., CUTTING, DICKERSON, BARROWS and DANFORTH, JJ., concurred.